OPINION
Defendant-appellant, Joseph Kelley ("Kelley"), appeals the decision of the Butler County Court of Common Pleas, Domestic Relations Division, valuing and dividing assets and awarding spousal support in a divorce proceeding against plaintiff-appellee, Beverly Kelley nka Hingsbergen ("Hingsbergen"). We affirm the trial court's decision in part and reverse the order in part.
On January 26, 2000, Hingsbergen filed a divorce complaint against Kelley. Kelley and Hingsbergen were married on May 27, 1972 and have two emancipated children. Both parties graduated from high school, with Kelley taking further courses in engineering. Kelley makes $82,000 a year at MTP, Inc. ("MTP"), a closely held corporation in which he is a 50% owner. Kelley's MTP stock is held in his Individual Retirement Account ("IRA").
When Kelley originally bought into MTP on December 14, 1993, he paid $50,000 out of his IRA for a 25% interest in the company. He became one of four owners of MTP. In 1999, Kelley and Jim Parks bought out two other shareholders by having MTP redeem the other shareholders' stock in order for Kelley and Parks to each obtain a 50% interest in MTP. Kelley and Hingsbergen signed a mortgage on the marital home in the amount of $900,000 in order to obtain the 50% interest.
The parties decided that Hingsbergen should raise the children and care for their home during the early years of their marriage. Occasionally, Kelley asked Hingsbergen to help at MTP. He later encouraged her to get a job, so she worked as a bank teller for less than a year. Hingsbergen claims to have a severe back injury which she feels makes it difficult for her to work at any job. She is currently working 50 hours a week at a jewelry store. The parties stipulated that Hingsbergen makes $10,000 a year.
As part of the division of assets in the divorce, the parties stipulated that Hingsbergen would receive the house, with equity of $130,844, the tractor, household goods, a race car with its engine and the leased car. Kelley was to receive his Harley-Davidson motorcycle and all items in the garage.
On November 15, 2000, the trial court issued a decision dividing the remainder of the assets and ordered Kelley to pay Hingsbergen a portion of the value of his interest in the MTP stock with a set-off for the value of the equity that Hingsbergen received for the marital home. It relied on the opinion of Hingsbergen's expert who found the stock in the IRA valued at $490,000. Kelley's expert testified that the stock was worth only $218,207. Including the set-off in the amount owed, the trial court ordered Kelley to pay Hingsbergen her share of the value of the stock, $179,578, within one year or in installment payments over five years at nine percent interest. Finally, Kelley was ordered to pay spousal support of $2,000 a month with the termination being death by either party, or remarriage or cohabitation by Hingsbergen. Further, the trial court "specifically reserved jurisdiction to modify this spousal support award based upon a change of circumstances."
Kelley filed a motion for reconsideration on February 27, 2001. Kelley claimed that the only way he would be able to pay the $179,578 was by selling his MTP stock. Further, he claimed that he would be subject to about 53% in total income and penalty taxes for taking the funds out of his IRA before he turns 59.[1] On March 2, 2001, the trial court held that Kelley intended to continue working for MTP, that there was no forced sale of the stock, and, so Kelley was speaking of only speculative tax. The trial court stated further, that if Kelley did have to sell the stock, then the tax liability was to be shared equally between the parties. The Judgment Entry and Decree of Divorce was filed on April 18, 2001. Kelley appeals raising three assignments of error.
Assignment of Error No. 1:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFF-APPELLANT [SIC] WHEN IT REFUSED TO TAKE INTO ACCOUNT THE TAX LIABILITY THAT APPELLANT WILL HAVE TO INCUR IN ORDER TO COMPLY WITH THE TRIAL COURT'S ORDER REGARDING PROPERTY DIVISION.
Kelley argues that all of his MTP stock is located in his IRA account and that, since he is younger than 59, he will incur heavy tax penalties for taking the money from the IRA account. He maintains that these tax consequences would cause him to have to sell nearly all of his stock in order to pay Hingsbergen the allotted $179,578. He further claims that Hingsbergen received the equity from the house of $130,844 with no tax consequence. He asks that the court take into account any tax implications of the valuation.
The trial court found that Kelley owed his wife a portion of the value of his stock in MTP, minus Hingsbergen's equity in the marital home she received. The trial court is vested with broad discretion in fashioning an equitable division of marital property. Donovan v. Donovan (1996),110 Ohio App.3d 615, 620. It is left to the trial court to determine what is equitable based upon the facts and circumstances of each case.Hermann v. Hermann (Nov. 6, 2000), Butler App. Nos. CA99-01-006 and CA99-01-011, 4, citing Cherry v. Cherry (1981), 66 Ohio St.2d 348. A reviewing court may modify or review a property division only if it finds that the trial court abused its discretion in dividing up the property as it did. Id. Abuse of discretion means more than an error of law or of judgment; instead, it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219, citing State v. Adams (1980), 62 Ohio St.2d 151.
In this matter, the tax consequences of the division of the property are in dispute. Pursuant to R.C. 3105.171(F)(6) and (7), the trial court, when making a distribution of marital property, shall consider many factors including the tax consequences and the costs of sale, if it is necessary for the asset to be sold. Moreover, tax consequences of property division and sustenance alimony awards are proper considerations for the court, so long as those consequences are not speculative. Dayv. Day (1988), 40 Ohio App.3d 155, 159.
The trial court found that Hingsbergen should receive, after the marital home equity credit, $179,578 of the value of the MTP stock. The record shows that Kelley's only assets are his MTP stock, an $82,000 salary, less than $300 in his bank accounts, a Harley-Davidson motorcycle and the items in the garage. Therefore, in order to make the payment, he will have to sell his MTP stock. To make the payment from the stock proceeds, he must remove the money from his IRA. By removing the money, he will incur tax consequences. The trial court heard many opinions during the trial concerning potential tax consequences.[2] These tax consequences are not speculative.
We have found in the past that where "the award is such that, in effect, it forces a party to dispose of an asset to meet obligations imposed by the court, the tax consequences of that transaction should be considered." Hermann, Butler App. Nos. CA99-01-006 and CA99-01-011, at 16, citing Day, 40 Ohio App.3d at 159. Based upon those decisions, the trial court must consider the tax consequences that its decision would have on Kelley. Therefore, we sustain appellant's first assignment of error and remand with instructions for the trial court to consider the tax consequences of selling the MTP stock and removing the money from the IRA.
Assignment of Error No. 2:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFF-APPELLANT [SIC] IN ITS VALUATION OF APPELLANT'S SHARE OF HIS BUSINESS.
Kelley contends that the court erroneously valued his MTP stock. He states that because he is only one of two shareholders, for valuation purposes, he has only a minority interest in MTP and, thus, the value of MTP should be discounted.[3]
Both Kelley and Hingsbergen proffered testimony of experts who evaluated MTP in order to determine the value of Kelley's MTP stock. A trial court, in valuing a marital asset, is neither required to use a particular valuation method nor precluded from using any method. Clymerv. Clymer (Sept. 21, 2000), Franklin App. No. 99AP-924, citing James v.James (1995), 101 Ohio App.3d 668. A trial court's valuation will be reversed only for an abuse of discretion. Id. Again, abuse of discretion implies that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore, 5 Ohio St.3d at 219.
Here the court heard extensive testimony regarding MTP's valuation from Kelley's expert, David Dinsmore, and Hingsbergen's expert, Jack Hastings. Hastings used an income approach in order to evaluate the value of MTP. He weighed the averages of MTP's income from fiscal years 1996 through 1999. He then adjusted that number by taking into account MTP's real estate and capitalization to come up with the fair market value. Finally he made balance sheet adjustments and ended up with MTP being valued at $980,000, or $495,000 for Kelley's 50% interest.
Dinsmore used an asset approach. He looked at MTP as a potential buyer would in order to ascertain the fair market value, analyzing its productivity, noting its lack of contracts with customers, noting the age of the machines and noting its lack of money to invest in newer equipment. After ascertaining the fair market value of $256,714 for Kelley's shares, he then applied a 15% discount to take into account that Kelley had a minority 50% interest in MTP. Taking the discount into consideration, Dinsmore ended up valuing Kelley's shares of MTP at $218,107.
The trial court heard further testimony during the trial that Kelley and Parks had MTP redeem the shares of their partners at $400,000 each. Also, the trial court heard that other companies were interested in purchasing MTP for between $1.6 and $3.7 million. Further, the court noted that Dinsmore's evaluation "systematically took into account circumstances which would lower the value of the business while systematically ignoring those which would raise the value." By considering all of the evidence presented, the trial court did not abuse its discretion in choosing to value Kelley's MTP shares at $495,000. Kelley's second assignment of error is overruled.
Assignment of Error No. 3:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT WHEN IT DID NOT PROVIDE A TERMINATION DATE FOR THE PAYMENT OF SPOUSAL SUPPORT.
Kelley claims that he should not have to provide $24,000 a year in spousal support for his wife indefinitely. He argues that the lack of termination date is "tantamount to indentured servitude." He also argues that Hingsbergen has no incentive to seek gainful employment.
Pursuant to R.C. 3105.18(C)(1), the trial court looks at a variety of factors when determining spousal support, including: earning abilities, age, physical, mental and emotional condition, education, duration of marriage, retirement benefits, standard of living, assets and liabilities and any other factor that the court finds relevant. In cases involving a marriage of long duration, parties of advanced age, and a homemaker-spouse with little opportunity to develop a career, a trial court may award alimony terminable only upon certain contingencies, like death, or the remarriage of the obligee or further order of the court.Koepke v. Koepke (1983), 12 Ohio App.3d 80, 81.
A reviewing court cannot substitute its judgment for that of the trial court unless, considering the totality of the circumstances, the trial court abused its discretion. Holcomb v. Holcomb (1989), 44 Ohio St.3d 128,131. As noted earlier, for an abuse of discretion to exist, the court's attitude must be unreasonable, arbitrary or unconscionable. Blakemore,5 Ohio St.3d at 219.
On review of the record, the evidence shows that the parties were married for 28 years. Hingsbergen, currently 50 years old, only worked sporadically during the marriage. Hingsbergen has only a high school education. As the trial court noted, she never took initiative to become financially independent of her husband. Also, she has back problems from a previous injury. Finally, we note that the trial court did reserve jurisdiction to modify the amount if Kelley's "financial fortunes" deteriorated. After reviewing the totality of the circumstances, we find the trial court did not abuse its discretion in ordering Kelley to pay Hingsbergen spousal support of $2,000 a month, subject to termination by death of either party, or remarriage or cohabitation by Hingsbergen. Kelley's third assignment of error is overruled.
The judgment of the trial court is affirmed in part and reversed and remanded in part with instructions to determine the tax consequences of selling the MTP stock and removing the money from the IRA.
POWELL, J., concurs.
WALSH, P.J., dissents.
[1] Currently Kelley is 54 and Hingsbergen is 50.
[2] One example given by Venturella, MTP's accountant, in his August 8, 2000 letter mentioned that funds from within Kelley's IRA could be rolled over into an IRA assigned to Hingsbergen. If completed correctly, the money transfer would not be considered a distribution. Thus, no tax would be due at the completion of the transaction.
[3] Although Kelley and Parks each have a 50% interest in MTP, it is considered a minority interest because neither can fully control the company and either can veto the other.